**FULTS, Admrx. v KINNEAR et**

Probate Court, Hardin County

Decided April 14, 1939

Stillings & Hanna, Kenton, for plaintiff.
Cessna & Cessna, Kenton and Fred Markley, Kenton, for defendants.

## OPINION

By DeWITT, J.

Charles F. Fults was a soldier in the World War and was the owner of a certificate of insurance as such soldier in the amount of Ten Thousand Dollars ($10,000). No one was named as beneficiary in this certificate of insurance.

The said Chales F. Fults died intestate on or about the 21st day of September, 1919, leaving the following brothers and sisters, namely, Samuel J. Fults, Maggie Kinnear, Anna Kinnear, Ada Kinnear and Elmer G. Fults, and the following nephews and nieces namely, Earnest Fults, Pearl Fults, Edith Fults, now Edith Fults Smith, and William Fults, who are children of William Fults, a deceased brother of the soldier, William, the deceased brother, having died prior to the death of the soldier.

Elmer G. Fults was duly appointed and qualified as administrator of the estate of said Charles F. Fults, deceased, on or about October 1, 1919 and fully administered said estate as appears by the record of the Probate Court of Hardin county, Ohio. Elmer G Fults died on or about July 3, 1934, leaving the following children, namely, Margaret Lily Fults and Helen Jane Fults, minors over fourteen years of age and Judson H. Fults, a minor under fourteen years of age.

After the death of the soldier, the Veterans' Bureau awarded insurance in equal monthly payments of $11.50 each to the five brothers and sisters of deceased soldier, namely, Samuel J. Fults, Elmer G. Fults, Anna Kinnear, Ada Kinnear and Maggie R. Kinnear, commencing September 30, 1919 and ending for Elmer G. Fults, July 29, 1934, by reason of his death on or about July 3, 1934 and ending for Samuel J. Fults, Anna Kinnear, Ada Kinnear and Maggie Kinnear, November 29, 1936, by reason of an erroneous distribution being made. The children of the deceased brother, William Fults, received nothing.

On the 10th day of August, 1936, Helen Fults was duly appointed and qualified as administratrix de bonis non of the estate of Charles F. Fults, deceased. After her appointment as such administratrix, the Veterans' Bureau commuted the entire amount of such insurance payments yet due and unpaid, and paid the same to said administratrix de bonis non. The amount so paid said administratrix was $1691.15. William Fults, son of the soldier's deceased brother, William, died intestate on or about the 28th day of September, 1938, and Pauline E. Fults, his widow, was appointed administratrix of his estate.

Pleadings were filed by all defendants herein. The prayer of the petition is for the determination of heirs and distributees and for a declaratory judgment of the distributive rights of defendants herein, and for all proper relief.

It is admitted that the brothers and sisters of the deceased soldier received the amounts as herein set forth and that the said nephews and nieces received nothing.

The undisputed fact remains that the soldier had such nephews and nieces who would have been entitled to receive the share their father would have received had he been living at the date of the soldier's death, provided said nephews and nieces were "within the permitted class". There was no beneficiary named in the soldier's Certificate of Insurance.

The original War Risk Insurance Act with certain amendments thereto did not include nephews and nieces "within the permitted class". On December 24, 1919, the War Risk Insurance Act was amended so as to include "within the permitted class" of beneficiaries, nephews and nieces. Section 13 of this act provided in part, as follows:

"Section 402 of the War Risk Insurance is hereby enlarged, so as to include, in addition to the persons therein enumerated, uncles, aunts, nephews, nieces, brothers-in-law and sisters-in-law of the insured."

Said Section 13 of the act goes further and provides as follows:

"This section shall be deemed to be in effect as of October 6, 1917: Provided, that nothing herein shall be construed to interfere with the payment of the monthly installments authorized to be made under the provisions of said War Risk Insurance Act, as originally enacted and subsequently amended, up to and including the second

calendar month after the passage of this act: Provided further, that all awards of insurance under the provisions of the said War Risk Insurance Act, so originally enacted and so subsequently amended, shall be revised as of the first day of the third calendar month after the passage of this act, in accordance with the provisions of the said War Risk Insurance Act as modified by this amendatory act."

Under this last above named act, these nephews and nieces were entitled to share in said insurance from the first day of March, 1920, said date being the first day of the third calendar month after the passage of this act, for the reason that they were then included as beneficiaries "within the permitted class", and from that day on would be entitled to receive the share their father would have received had he been living which would be the one-sixth (1/6) of said insurance and the same that each brother and sister would have been entitled to receive. That an error has been made in the number and amount of payments made to the beneficiaries of this insurance is to the court very apparent. The brothers and sisters living at the death of the soldier have been paid amounts in excess of what they were entitled to while the said nephews and nieces were paid nothing. However, this court is without jurisdiction to control the funds already received by the brothers and sisters and therefore makes no orders concerning said funds so received.

The question for determination is the disposition of the funds now in the hands of the administratrix de bonis non of the estate of the deceased soldier, paid to said administratrix de bonis non by the Veterans' Bureau. This fund is no longer under the control of the Veterans' Bureau but its disposition is governed by the laws of Ohio in force at the date of the death of the soldier, said soldier leaving no will.

The Act of Congress, March 4, 1925, amended Section 303 of the World War Veterans' Act of 1924 to read as follows:

"If no person within the permitted class be designated as beneficiary for a yearly renewable term insurance by the insured either in his lifetime or by his last will and testament or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty (240) installments or all such as are payable and applicable, there shall be paid to the estate of the insured, the present value of the monthly installments thereafter payable, said value to be computed as of date of the last payment made under any existing award."

In the Singleton v Cheeks case, 284 U. S. 493, 76 L. ed 421, the Supreme Court of the United States, among other things, held that:

"The amendment in express terms was made retroactive so as to take effect as of October 6, 1917, a provision undoubtedly within the power of Congress."

Said court further held that:

"All installments, whether accruing before the death of the insured or after the death of the beneficiary named in the Certificate of Insurance, as a result, became assets of the estate of the insured as of the instant of his death, to be distributed to the heirs of the insured in accordance with the intestacy laws of the state of his residence, such heirs to be determined as of the date of his death."

The Supreme Court of Ohio in the case of Palmer v Mitchell, 117 Oh St 87, holds the same.

Under the authority of both the Supreme Court of the United States and the state of Ohio, as above cited, the commuted payments, to-wit, the funds paid to said administratrix de bonis non in the instant case, are to be distributed to the heirs of the insured, ▓▓▓▓▓▓▓ ▓ the deceased soldier, in accordance with the intestacy laws of the state of Ohio, such heirs to be determined as of the date of the death of the soldier. The heirs of the soldier at the time of his death were his brothers and sisters, namely, Elmer G. Fults, Samuel J. Fults, Maggie R. Kinnear, Anna Kinnear and Ada Kinnear, and the children of William Fults, deceased brother of the soldier, namely, Pearl Fults, Edith Fults Smith, Earnest J. Fults and William Fults. The said five brothers and sisters would each be entitled to the one-sixth (1/6) of said insurance and the said four children of William, the deceased brother, would be entitled as a group, to the one-sixth (1/6) of said insurance. provided said nephews and nieces were "within the permitted class" of beneficiaries at the date of soldier's death. However they were not included in said class until March 1, 1920. Those nephews and nieces, therefore, would not be entitled to participate in said insur-

ance under the War Risk Insurance Act until March 1, 1920. Monthly installments of insurance of $11.50 each were awarded to each of the five brothers and sisters living at the time of the death of the soldier, by the Veterans' Bureau, from September 30, 1919, said brothers and sisters being then "within the permitted class" of beneficiaries.

As above stated, on December 24, 1919, Section 402 of the War Risk Insurance Act was enlarged so as to include nephews and nieces "within the permitted class". According to this act, nephews and nieces would be beneficiaries "within the permitted class" from the 1st day of March, 1920, and from this date, the nephews and nieces in the instant case would be entitled to receive one-sixth (1/6) of said insurance.

As stated above, the awards were discontinued as to Elmer in July, 1934 by reason of his death and as to the others on November 29, 1936 because of erroneous distribution. Unquestionably, the only erroneous distribution was the excessive awards made to the brothers and sisters and no awards to the nephews and nieces who had the same rights to participate in the insurance as the brothers and sisters from and after March 1, 1920. Who is responsible for this error is not clear. It was no fault of the nephews and nieces. There is no question in the mind of the court but what an injustice has been done these nephews and nieces. This wrong should be righted and such a distribution of the funds now in the hands of the administratrix de bonis non be made, as far as possible, as justice and equity require.

Sec. 10501-53, GC, among other things, provides:

"Except as hereinafter provided, the Probate Court shall have jurisdiction to direct and control the conduct, and settle the accounts of executors and administrators, and order the distribution of the estates."

Said section also provides that:

"The Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute."

It has been held that the Probate Courts have full jurisdiction to adjudicate all questions arising in proceedings before them. Willerding v Miller, 90 Oh St, 28; State ex v Morrow, 131 Oh St 276; 5 OO 584.

Sec. 12102-4, GC, provides that:

"Any person interested as or through an executor, administrator, trustee, guardian or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the administration of a trust or of the estate of decedent, an infant, lunatic, or insolvent may have a declaration of rights or legal relations in respect thereto:

"(a) To ascertain any claims of creditors, devisees, legatees heirs, next of kin, or others; or

"(b) To direct the excutors, administrators, trustees or other fiduciaries to do or abstain from doing any particular act in the fiduciary capacity; or

"(c) To determine any question arising in the administration of the estate of trust, including questions of construction of laws and other rights."

In the case of Clapp v Banking Company, 50 Oh St 528-537, the court held as follows:

"When the proceedings conferred is inherently equitable in character, the court in respect to it, appear to have plenary chancery powers. 'Although the Probate Court is of limited stautory jurisdiction, it is, we think a mistake to suppose that it has no equity powers unless the same are expressly conferred. A power given to make a particular order implies authority to hear and dispose of all questions which it is necessary to have satisfied before the making of such final order, unless the needed authority is distinctly denied.'"

In the case of Hummel v Hummel, 133 Oh St 520, 11 OO 221, decided May 4, 1938, the court discussed quasi contracts which had to do in part with the doctrine of "unjust enrichments." Some of the principles laid down in this case are the following:

"Quasi contracts are founded * * * upon the fundamental oriciple of justice that no one ought to unjustly enrich himself at the expense of another.

"By far the most important and most numerous illustrations of the scope of quasi contracts are found in those cases where the plaintiff's right to recover rests upon the doctrine that a man shall not be allowed to enrich himself unjustly at the expense of another.

"In our judgment, unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another."

The Hummel case is referred to because the principles of justice and equity are

recognized as being very beneficial and important and reflects some light upon the proper disposition of the instant case in which similar principles are involved.

Under both the War Risk Insurance Act and the Ohio laws of descent and distribution, these nephews and nieces as a group are entitled to an equal share with the other beneficiaries of this insurance. They have received none. The other beneficiaries have been paid money which rightfully belongs to these nephews and nieces and they still retain it. This is contrary to both law and equity and should be remedied. Since this court is without jurisdiction to order a refund, the most this court can do is to make such a disposition of the funds now in the hands of the said administratrix de bonis non as will, as far as possible, restore to these nephews and nieces their equitable and legal rights.

Therefore, in consideration of the foregoing, the court finds and declares as follows:

1. That the heirs of the deceased soldier, Charles F. Fults, at the time of his death, are the following named persons: Samuel J. Fults, Elmer G. Fults, Maggie Kinnear, Anna Kinnear and Ada Kinnear, brothers and sisters of the soldier, and Earnest Fults, Pearl Fults, Edith Fults, now Edith Fults Smith, and William Fults, who are children of William Fults, deceased brother of said Charles F. Fults, deceased, and all of said heirs are entitled to participate in the insurance of the soldier.

2. That the said brothers and sisters were each entitled to receive the one-fifth (1/5) of said insurance from September 30, 1919 to March 1, 1920, and the one-sixth (1/6) thereof from March 1, 1920; and the four nephews and nieces nieces, as a group, were entitled to receive the one-sixth (1/6) of said insurance from and after March 1, 1920, that is, the nephews and nieces were each entitled to receive the one-twenty-fourth (1/24) part thereof.

3. That each brother and sister has received awards of insurance in excess of what each is entitled to and in excess of the amount of the funds now in the hands of the said administratrix de bonis non of the estate of the deceased soldier.

4. That William Fults, a nephew of the deceased soldier, died intestate and that his estate is now in process of administration.

5. That the said nephews and nieces, namely, Earnest Fults, Pearl Fults and Edith Fults Smith, and the estate of William Fults, deceased nephew, are each entitled in equal portions to the funds now in the hands of the said administratrix de bonis non.

6. That this court is without jurisdiction to order a refund of the amount of insurance received by the beneficiaries in excess of the amount they are entitled to.

It is therefore ordered that the funds now in the hands of the administratrix de bonis non of the estate of said Charles F. Fults, deceased, after first deducting the costs and expenses of administration of the soldier's estate, be paid and distributed in equal portions to the said Earnest Fults, Pearl Fults, Edith Fults Smith and the estate of the deceasde nephew, William Fults.